# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| DELLA SHORE, LISA ENGEL, MARK RACZ, MICHAEL SCHWOB, AND LYDIA WALKER, on behalf of themselves, individually, and on behalf of all others similarly situated, and on behalf of the Atrium Plans,<br><br>Plaintiffs,<br><br>v.<br><br>THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY (D/B/A Atrium f/k/a CAROLINAS HEALTHCARE SYSTEM), a North Carolina Non-profit Corporation, ATRIUM HEALTH RETIREMENT COMMITTEE, JOHN and JANE DOES 1-20, MEMBERS OF THE ATRIUM HEALTH RETIREMENT COMMITTEE, each an individual, MEDCOST LLC, and MEDCOST BENEFIT SERVICES, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. _____<br><br>Judicial Officer: _____<br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Lisa Engel, Mark Racz, Michael Schwob, Della Shore, and Lydia Walker, individually and on behalf of all those similarly situated, as well as on behalf of the Atrium Plans, as defined herein, by and through their attorneys, hereby allege as follows:

## I.   INTRODUCTION

1.     Congress enacted the Employee Retirement Income Security Act ("ERISA") in 1974 to protect the interests of participants and beneficiaries in employee benefits plans.  ERISA covers all employee benefit plans offered by employers to their employees, with a few narrow exceptions.  One such exception is for a Governmental Plan—a plan "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." ERISA § 3(32); 29 U.S.C. § 1002(32).  The purpose of the Governmental Plan exemption, as it relates to plans established by States and their political subdivisions, was to eliminate federalism concerns. Additionally, Congress noted that governmental entities could fulfill their benefit obligations to employees through their taxing powers and, with respect to their defined benefit plans, did not have the same need for minimum funding standards and plan termination insurance as private entities.

2.     The onus is on the employer to demonstrate that its plan satisfies the definition of the "Governmental Plan" exemption.  *See, e.g.*, *Elmore v. Cone Mills Corp.*, 23 F.3d 855 (932) (4th Cir. 1994) (employer bears the burden of proving an exemption to ERISA's provisions).

3.     The Charlotte Mecklenburg Hospital Authority (currently d/b/a Atrium Health, f/k/a Carolinas HealthCare System, hereinafter "Atrium") is a non-profit healthcare conglomerate that is headquartered in Mecklenburg County, North Carolina and operates in three states.  Atrium established and maintains at least three employee benefit plans—the Pension Plan

CLASS ACTION COMPLAINT
PAGE - 1

of the Charlotte-Mecklenburg Hospital Authority ("Pension Plan"), the Carolinas HealthCare

System 401(k) Matched Savings Plan ("401(k) Plan"), and the Carolinas HealthCare System

LiveWELL Health Plan ("Health Plan") (collectively, the "Plans"). None of these Plans comply

with ERISA because Atrium erroneously claims that Atrium is a "governmental entity."

4.      Atrium has never satisfied the Federal law definition of a government of a state, a

government of a political subdivision, or an agency or instrumentality of such and, therefore, the

Plans do not qualify as ERISA-exempt Governmental Plans.   Atrium's Plans were not

established by a governmental entity, and more importantly, the Plans are not maintained by any

governmental entity,

5.      The lack of control over Atrium by any State, political subdivision, or agency or

instrumentality of such has allowed Atrium unfettered growth to expand its operations to three

states.

6.      For example, Atrium's governing body—the Board of Atrium Commissioners—is

not controlled by any state or political subdivision thereof.  Atrium's daily operations are not

controlled or overseen by officials of any state or political subdivision thereof.

7.      Atrium's Board of Commissioners are not publicly nominated or elected—

incoming Atrium Commissioners are nominated by the Atrium Commissioners in a self-

perpetuating cycle.

8.      Atrium's employees are not treated in the same manner as government employees

of any state or employees of any political subdivision thereof.  For instance, Atrium employees:

(a) are not entitled to civil service protections; (b) are not subject to any state personnel act,

which provides a system of personnel administration for state and local government employees;

(c) do not have their salaries publicly available, compared to the salaries of state and local

government employees; and (d) are paid salaries from Atrium's revenue, not from any state funds or county funds collected from a taxpayer.

9.      No state nor any political subdivision of a state has fiscal responsibility for any debts or liabilities of Atrium.  No state or political subdivision thereof provides *any* funding to Atrium, including any funding for Atrium's employee benefit Plans.  Atrium is not funded through tax revenues or other public sources.

10.      Atrium does not have the authority to levy taxes on any state residents or residents of any political subdivision to fund its operations or to raise revenue to fund its Plans rendering the claim to be a government plan all the more inapt.

11.      Rather, Atrium is a non-profit healthcare conglomerate that competes with other non-profit healthcare conglomerates in its commercial healthcare activities.

12.      Further belying its claim of being a political subdivision of the State is the fact that Atrium owns and/or operates numerous healthcare facilities in *three different* states, including religiously-affiliated healthcare facilities.[1]

13.      Atrium has no relationship with any state or any political subdivision thereof and is presently being sued by the State of North Carolina over antitrust violations.  Atrium and Mecklenburg County were also recently engaged in litigation over a contractual agreement.

14.      Atrium's claim to the Governmental Plan exemption puts the retirement and health benefits of over 65,000 employees in jeopardy.  This claimed exemption from ERISA coverage permits Atrium's retirement and health plans to engage in activities that would be prohibited for ERISA-governed plans.  These actions, described in greater detail below, harm

---

[1] For instance, religiously-affiliated hospitals, Bon Secours/St. Francis Hospital and St. Luke's Hospital, are included in Atrium Health's regional enterprise.

participants by decreasing the security of their retirement benefits, failing to disclose information about their benefits, and forcing participants to pay higher costs for healthcare coverage. But Atrium has never satisfied the federal law definition of a governmental entity, so its claim of Governmental Plan status for the Plans fails.

15.     Accordingly, because Atrium does not currently and has never satisfied the definition of a governmental entity, Plaintiffs seek an Order requiring Atrium to bring its Plans into compliance with ERISA and afford the Class all the protections of ERISA.

## II.     JURISDICTION AND VENUE

16.     **Subject Matter Jurisdiction.** This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

17.     **Personal Jurisdiction.** This Court has personal jurisdiction over all Defendants because ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All Defendants are either residents of the United States or subject to service in the United States, and the Court therefore has personal jurisdiction over them. The Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be subject to a court of general jurisdiction in this District as a result of Defendant Atrium being headquartered in, transacting business in, and/or having significant contacts with this District.

18.     **Venue.**  Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) the Plans are administered in this District, (b) some or all of the violations of ERISA took place in this District, and/or (c) Defendant Atrium may be found in this District.

19.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Atrium systematically and continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.  PARTIES

### A.    Plaintiffs

20.     Plaintiff Lisa Engel is a resident of Denver, North Carolina and a former employee of Atrium from September 1997 to January 2002 and September 2012 to August 2016.  She was formerly a participant in the Health Plan and 401(k) Plan and was wrongfully denied vesting in the Pension Plan due to the Pension Plan's improper vesting schedule that does not comply with ERISA.  Additionally and alternatively, Plaintiff Engel has a colorable claim to benefits under the Health Plan and Pension Plan and is a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Plans pursuant to ERISA §§ 502(a)(1)(A) and (B), 502(a)(2), 502(a)(3), and 502(c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), 1132(a)(2), 1132(a)(3), and 1132(c)(1) and 1132(3).

21.     Plaintiff Mark Racz is a resident of Tega Cay, South Carolina and a former employee of Atrium from years 2014 to 2018.  He is a former participant in the 401(k) Plan and the Health Plan.   Additionally and alternatively, Plaintiff Racz has a colorable claim to benefits under the  Health Plan and is a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Plans pursuant to ERISA §§ 502(a)(1)(A) and (B), 502(a)(2), 502(a)(3), and 502(c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), 1132(a)(2), 1132(a)(3), and 1132(c)(1) and 1132(3).

22.     Plaintiff Michael Schwob is a resident of Charlotte, North Carolina and a former employee of Atrium from 2014 to 2017.  He is currently a vested participant in the 401(k) Plan and was previously a participant in the Health Plan.  Additionally and alternatively, Plaintiff Schwob has a colorable claim to benefits under the 401(k) and Health Plan and is a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Plans pursuant to ERISA §§ 502(a)(1)(A) and (B), 502(a)(2), 502(a)(3), and 502(c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), 1132(a)(2), 1132(a)(3), and 1132(c)(1) and 1132(3).

23.     Plaintiff Della Shore is a resident of Linwood, North Carolina and a former employee of Atrium from 1993 to 2013.  She is currently a vested participant in the Pension Plan and was previously a participant in the Health Plan and 401(k) Plan.  Additionally and alternatively, Plaintiff Shore has a colorable claim to benefits under the Health Plan and Pension Plan and is a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Plans pursuant to ERISA §§ 502(a)(1)(A) and (B), 502(a)(2), 502(a)(3), and 502(c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), 1132(a)(2), 1132(a)(3), and 1132(c)(1) and 1132(3).

24.     Plaintiff Lydia Walker is a resident of Fort Mill, South Carolina and a former employee of Atrium from 1997 to 2018.  She is currently a participant in the Health Plan and was previously a participant in the 401(k) Plan and Pension Plan.   Additionally and alternatively, Plaintiff Walker has a colorable claim to benefits under the Health Plan and is a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Plans pursuant to ERISA §§ 502(a)(1)(A) and (B),

502(a)(2), 502(a)(3), and 502(c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), 1132(a)(2), 1132(a)(3), and 1132(c)(1) and 1132(3).

**B.     Defendants**

25.     **Defendant Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health f/k/a Carolinas HealthCare System**. Atrium is headquartered in Charlotte, North Carolina, but has operations throughout North Carolina, South Carolina, and Georgia. Atrium is the largest healthcare system in North and South Carolina and one of the largest non-profit healthcare systems in the nation. Atrium owns, leases, or manages 40 hospitals, as well as nursing homes, physician practices, home health agencies, radiation therapy facilities, physical therapy facilities, and other healthcare related operations, comprising more than 7,500 licensed beds and more than 65,000 full-time and part-time employees.

26.     Atrium is the plan sponsor of the Pension Plan, 401(k) Plan, and Health Plan.

27.     Upon information and belief, Atrium is also the Plan Administrator for the Health Plan.

28.     **Defendant Atrium Retirement Committee.**  Defendant Atrium Retirement Committee is the Plan Administrator of the Pension Plan and 401(k) Plan.

29.     **Defendants John and Jane Does, 1-20, Members of Defendant Atrium Retirement Committee.** Defendants John and Jane Does 1-20 are individuals who, through discovery, are found to be members of the Atrium Retirement Committee.  These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

30.     **Defendant MedCost LLC.** Defendant MedCost LLC is a for-profit, managed care network that provides a "preferred provider" network to self-insured medical plans. Defendant MedCost LLC is the network provider for the Atrium Health Plan.

31.     **Defendant MedCost Benefit Services LLC.** Defendant MedCost Benefit Services LLC is a fully owned subsidiary of MedCost LLC and is the third-party administrator and claims administrator for the Health Plan.

32.     **Defendant "MedCost."** Hereinafter, MedCost LLC and MedCost Benefit Services LLC are collectively referred to as "MedCost." MedCost is jointly owned—50% by Atrium and 50% by Wake Forest Baptist Medical Center.

33.     **Defendants John and Jane Does 21-40**. Defendants John and Jane Does 21-40 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the Plans and are fiduciaries within the meaning of ERISA. These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

34.     Members of the Atrium Retirement Committee, John and Jane Does 1-20, and John and Jane Does 21-40 are collectively referred to herein as the **"Individual Defendants."**

35.     Atrium, the Atrium Retirement Committee, and the Members of the Atrium Retirement Committee, John and Jane Does 1-20, are collectively referred to herein as the **"Fiduciary Defendants."**

## IV.     ATRIUM IS NOT A GOVERNMENTAL ENTITY

36.     Atrium claims that the Plans are Governmental Plans under ERISA § 3(32), 29 U.S.C. § 1002(32), and are therefore exempt from ERISA's coverage under ERISA § 4(b)(1), 29 U.S.C. § 1003(b)(1).

37.     However, under ERISA § 3(32), 29 U.S.C. § 1002(32), a Governmental Plan must be "established or maintained for its employees by the Government of the United States, the government of any State or political subdivision thereof, or an agency or instrumentality of any of the foregoing."

38.     Under federal law, Atrium is not (1) the Government of the United States, (2) the government of any State or political subdivision thereof, or (3) the agency or instrumentality of any of the foregoing (together, a "governmental entity"). In particular, Atrium—which was founded in Charlotte, North Carolina—is not a North Carolina (hereinafter "State") governmental entity, a Mecklenburg County (hereinafter "County") governmental entity, or an agency or instrumentality of either.

39.     Atrium is the entity that established and/or maintains all the Plans.

40.     Atrium has never satisfied the Federal law definition of a governmental entity. Thus, the Atrium Plans are not Governmental Plans and are not entitled to claim the Governmental Plan exemption from ERISA.

## A.     Atrium's Governing Board is Not Publicly Nominated or Elected

41.     Atrium is governed by the Board of Atrium Commissioners. The Board of Atrium Commissioners is primarily composed of CEOs or other executives of private companies.

42.     The Atrium Commissioners are not publicly nominated or elected.

43.     No residents of any State or County nominate Atrium Commissioners. Instead, the Atrium Commissioners nominate their own replacements.

44.     The members of the Board of Atrium Commissioners cannot be replaced by the general electorate of the State or any political subdivision thereof through a vote.

CLASS ACTION COMPLAINT
PAGE - 9

2417586.1

**B.**    **Atrium's Governing Board is Not Controlled by a State, Political Subdivision, or any other Governmental Entity**

45.    The State or any officials of a State do not appoint members of the Board of Atrium Commissioners.

46.    The State or any officials of the State do not remove members of the Board of Atrium Commissioners.

47.    The State or any officials of the State does not nominate new members of the Board of Atrium Commissioners.

48.    Upon information and belief, no State officials have ever served on the Board of Atrium Commissioners.

49.    Atrium Commissioners nominate new members of the Board of Atrium Commissioners.  No public officials are able to nominate candidates for the Board of Atrium Commissioners.

50.    The Board of Atrium Commissioners submits the list of nominees to the Chairman of the County Commissioners.

51.    Historically, the Chairman has rubber-stamped the nominees for the Board of Atrium Commissioners.

52.    The other County Commissioners have no ability to approve or reject nominations for the Board of Atrium Commissioners.

53.    Upon information and belief, the Chairman of County Commissioners has never removed an Atrium Commissioner from the position.

54.    Upon information and belief, no County officials have ever served on the Board of Atrium Commissioners.

55.     In contrast, governmental entities of the County permit the County Commissioners to directly appoint members of the board.  County Commissioners appoint board members of the library, parks and recreation department, and the Alcoholic Beverage Control ("ABC") Board.  County Commissioners do not receive a list of nominees from these County governmental entities.

56.     The Board of Atrium Commissioners is composed almost entirely of CEOs or other executives of private companies.

57.     Upon information and belief, Atrium also fails to provide periodic data or monitoring to the County Commissioners on the performance of Board of Atrium Commissioners.

58.     Neither State nor County officials attend meetings of the Board of Atrium Commissioners.

59.     Moreover, there is no oversight of Atrium's everyday operations by the government.  No State, no County, nor any other governmental entity oversees the daily operations of Atrium.

60.     Atrium officers and employees conduct Atrium's everyday operations, such as matters related to human resources, healthcare, accounting, marketing, and business development.  No State or County officials or employees are involved with Atrium's everyday operations.

61.     Atrium does not communicate with officials of any State or County about daily operations.

62. Upon information and belief, Atrium Health does not provide annual reports or performance reports to the State, any political subdivision of the State, or any other governmental entity.

63. Upon information and belief, Atrium Health does not provide annual audits to the State, any political subdivision of the State, or any other governmental entity.

64. Upon information and belief, Atrium enters into leases and other contracts and holds property in its own name.

65. No State, political subdivision of any State, or any State or County officials exercise any control over Atrium's budget.

66. Atrium operates in complete isolation from the State, the County, and from any other governmental entity.

**C. No State, Political Subdivision, or any other Governmental Entity Has the Powers and Interests of an Owner with Respect to Atrium**

67. Atrium is a non-profit healthcare system. No State, political subdivision or governmental entity has an ownership or shareholder interest in Atrium nor does one exercise influence or control over Atrium's Board of Commissioners.

68. Thus, private parties oversee the management of Atrium.

**D. Atrium Health's Employees are Not Treated as Employees of any State, Political Subdivision, or any other Governmental Entity**

69. Atrium employees are not treated as employees of North Carolina, employees of a political subdivision of North Carolina, or employees of any other governmental entity.

70. Atrium employs over 65,000 individuals across three states.

71. Atrium employees are not subject to North Carolina's State Personnel Act, which provides a system of personnel administration for State and local government employees.

72.     Atrium employees' salaries are funded by Atrium, not by any State, political subdivision, or any other governmental entity.

73.     Atrium executives earn salaries of several million dollars, far above the pay of a State or County employee.  In 2017, the CEO of Atrium received $5.4 million in total compensation.  That same year ten Atrium executives earned over $1 million in compensation, with some earning over $2.3 million.[2]

74.     Atrium employees' salaries—outside of the top executives[3]—are not publicly disclosed, unlike the salaries of State and County employees which are publicly listed pursuant to N.C. G.S. § 160A-168.

75.     Atrium employees do not receive employee benefits from the State or County employee benefit plans.  No State, no political subdivision, and no other governmental entity exercises control over the Atrium Plans or the Plans' funds.

76.     Atrium employees are not included under the County ethics policy for County employees.  Atrium does not complete ethics disclosures.

---

[2]  The Chief Investment Officer of North Carolina's pension plan earned $387,081.00 when he quit in 2017, which made him the highest-paid North Carolina state employee, outside of UNC's football and basketball coaches (the highest pay of which is $1.1 million).  *See* https://www.newsobserver.com/news/politics-government/politics-columns-blogs/under-the-dome/article193969214.html.  For a database of all North Carolina government employee salaries, *see* https://www.newsobserver.com/news/databases/state-pay/. The County Manager received a salary of $312,319.00 in 2018 and was the only County employee to be paid over $300,000 that year.  *See* https://www.charlotteobserver.com/news/local/article207258934.html for a full list of County employee positions and respective salaries.

[3] A 2009 change in state law required disclosure of the total compensation for top executives of public hospitals like Atrium Health. However, Atrium Health is permitted to keep salaries of non-executive employees private.

CLASS ACTION COMPLAINT
PAGE - 13

2417586.1

77.     Neither the State government nor the County government considers Atrium employees to be employees of the State or County government.[4]

78.     Upon information and belief, Atrium employees are not granted civil service protections.

79.     Upon information and belief, Atrium employees are not able to join credit unions open to government employees based on employment at Atrium.

**E.     Atrium Health Receives No Funding from the State or Any Political Subdivision Thereof**

80.     Atrium is financially autonomous from the State, the County, and any other governmental entity.

81.     Aside from funding typically provided to all public and private hospitals, irrespective of governmental status, no State, no political subdivision, and no governmental entity provides funds to Atrium.

82.     Atrium previously maintained a contractual arrangement with the County called the "Joint Undertaking," under which Atrium provided employees to work in the County Health Department and in return the County provided annual subsidies to Atrium for indigent care. However, the contractual relationship between the County and Atrium broke down in 2011 over alleged breaches by Atrium, and County Commissioners voted to phase out the Joint Undertaking by June 30, 2013. Atrium sued the County for breach of contract but dropped the lawsuit in 2012. The County ceased subsidies to Atrium in 2013. Atrium presently receives no funding or compensation from the County.

---

[4] Rev. Rul. 89–49, 1989–1 C.B. 117 (1989) (finding that the plan was not a governmental plan because employees were never treated by the state as employees of the state or a political subdivision thereof)

83.     In contrast, governmental entities in the County receive funding from the County. The County library is completely funded by the County. The North Carolina ABC Board receives both State and County funding.

84.     No State, political subdivision, or any other governmental entity bears responsibility for Atrium's debts or liabilities.

85.     No State, political subdivision, or any other governmental entity secures Atrium's revenue bonds.

86.     Creditors of Atrium are not creditors of the State or County or any other governmental entity.

87.     Atrium is not funded through tax revenues or any other public source. Atrium cannot levy a tax on State or County residents.

88.     Atrium's retirement and health plans are not connected to the retirement and health plans of the State or the County; they are separate plans sponsored by Atrium. The County's retirement plans are self-funded.

**F.     Atrium Does Not Possess the Sovereign Powers of a State, Political Subdivision, or any other Governmental Entity**

89.     Atrium is a hospital authority. Hospital authorities, including Atrium, have no authority to levy taxes to fund their operations.

90.     In contrast, North Carolina has a distinct entity called a "Hospital District." A hospital district has authority to levy a tax for financing operation, equipment, or maintenance.

91.     Atrium does not exercise any police power of the State or a political subdivision thereof.

92.     Hospital authorities, such as Atrium, cannot claim sovereign immunity from suit. *See, e.g.*, *Thomas v. Hospital Authority*, 264 Ga. 40, 440 S.E.2d 195 (1994) (Georgia hospital

CLASS ACTION COMPLAINT
PAGE - 15

authority could not claim the defense of sovereign immunity because the hospital authority was not a department or agency of the State).

93.     Atrium has never exercised eminent domain.

**G.     Other Characteristics of Atrium Demonstrate that Atrium is Not a State, Political Subdivision, or any other Governmental Entity**

94.     Atrium employs lobbyists and has donated substantially to political campaigns and lobbying efforts.

95.     Atrium operates a Political Action Committee and has contributed to state senators.[5]

96.     Atrium manages religiously-affiliated hospitals, such as Bon Secours St. Francis Hospital and Roper Hospital.

97.     Atrium maintains operations in three states: Georgia, North Carolina, and South Carolina.  Atrium has continually changed its name to reflect its expanding operations—the name change from Carolinas Healthcare to Atrium Health was announced in February 2018, the same month Atrium announced its acquisition of the Georgia healthcare system Navicent Health. The merger was to provide a regional hub for Atrium outside of North and South Carolina.

98.     Atrium is currently being sued by the United States of America and the State of North Carolina for antitrust violations.  *See United States v. Charlotte-Mecklenburg Hospital Authority*, 248 F. Supp. 3d 720 (W.D.N.C. 2017).

---

[5] A record of Atrium's donations to political candidates (under the entity's previous name Carolinas Healthcare System) can be found at https://www.followthemoney.org.

99.     Atrium is not represented by the North Carolina Attorney General; instead, Atrium was *sued by* the North Carolina Attorney General in the foregoing antitrust case.  Atrium can sue and be sued in its own name.

## V.     THE EMPLOYEE BENEFIT PLANS

100.     Atrium established and currently maintains at least three different Plans for its employees—a noncontributory defined benefit pension plan ("Pension Plan"), a defined contribution pension plan ("401(k) Plan"), and a health and welfare plan ("Health Plan") (collectively, "the Plans").  Atrium has the power to continue, amend, or terminate these Plans.

101.     Atrium does not operate these Plans in accordance with ERISA because Atrium claims that the Plans are subject to the exemption for "Governmental Plans."

### 1.     The Pension Plan

102.     The Pension Plan is a non-contributory defined benefit pension plan covering many of Atrium's employees.

103.     The Pension Plan is a cash balance plan, whereby the accrued benefits are reflected as a hypothetical account balance.

104.     The Pension Plan meets the definition of an "employee benefit pension plan" under ERISA, 29 U.S.C. § 1002(2)(A), because it is a plan, fund, or program that was established or maintained by Atrium and which, by its express terms and surrounding circumstances, provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond.

105.     The Pension Plan is a defined benefit plan (rather than a defined contribution plan) under ERISA §3(35), 29 U.S.C. § 1002(35) because the plan does not provide for an

individual account for each participant and does not provide benefits based solely upon the amount contributed to a participant's account.

106.    The Fiduciary Defendants fail to operate the Pension Plan in accordance with ERISA because they maintain that it is an exempt Governmental Plan.

107.    Participants are harmed by the failure to operate the Pension Plan in accordance with ERISA.

108.    The lack of ERISA coverage means that Atrium does not have to comply with ERISA minimum funding provisions, which has led to the Pension Plan becoming significantly underfunded.  As of 2017, the Atrium Pension Plan is only 65% funded under the Governmental Accounting Standards Board standards (the Pension Plan was 63% funded in 2016 and 67% funded in 2015).  As of the end of 2017, the net unfunded liability of the Pension Plan was $379 million.

109.    Upon information and belief, the Pension Plan does not pay premiums to the Pension Benefit Guaranty Corporation ("PBGC") as an ERISA-governed plan is required to do. This leaves participants without insurance for their accrued benefits in the event Atrium is not able to pay out benefits; participants have no guaranteed level of benefits in case the Pension Plan terminates in an underfunded state.

110.    The Pension Plan is a cash balance defined benefit plan.  A cash balance plan computes accrued benefits by reference to hypothetical account balances or equivalent amounts.

111.    The Pension Plan requires participants to have at least 5 years of vesting service to be fully vested in their accrued benefits under the Pension Plan.

112.    Under ERISA §§ 203(a)(2) and (f)(2), 29 U.S.C. §§ 1053(a)(2) and (f)(2), a cash balance plan such as the Pension Plan may not require a participant to complete more than three years of service to become fully vested in her benefits under the Plan.

113.    Atrium therefore operates the Pension Plan in violation of ERISA §§ 203(a)(2) and 203(f)(2) because it requires participants to complete five years of vesting service to be vested in their benefits under the Plan.

114.    As a result, all participants who have at least three but fewer than five years of vesting service, are unlawfully being denied their entire accrued pension benefits by the Defendants due their failure to operate the Pension Plan in compliance with ERISA's requirements.

115.    Plaintiff Engel is included in this group. She worked for Atrium for nearly four years, which would be sufficient to vest in the Pension Plan with a proper ERISA schedule; but due to the five-year vesting requirement of the Pension Plan, she was unlawfully denied a pension.  She was previously told over the phone by a fiduciary to the Pension Plan that she was fully vested in the Pension Plan and received her benefit amount in a statement from December 2016; however, she was later told by Atrium that this was a mistake and she did not vest in the Plan.

116.    The Pension Plan does not comply with the reporting and disclosure provisions of ERISA.

117.    The Pension Plan does not provide participants with summary plan descriptions compliant with ERISA.  ERISA § 104, 29 U.S.C. § 1024.

118.    The Pension Plan does not make the latest annual report required by ERISA available to participants.  ERISA § 104; 29 U.S.C. § 1024.

119.     The Pension Plan does not file Form 5500 with the Department of Labor. *See* ERISA §§ 101, 104, 29 U.S.C. §§ 1021, 1024.

120.     The Pension Plan does not provide funding notices to its participants.  *See* ERISA § 104(d), 29 U.S.C. § 1024(d).

121.     The Pension Plan does not regularly provide pension benefit statements to its participants.  *See* ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

**2.      The 401(k) Plan**

122.     The 401(k) Plan is a defined contribution plan covering substantially all of Atrium's employees.

123.     The 401(k) Plan meets the definition of an "employee benefit pension plan" under ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), because it is a plan, fund, or program that was established or maintained by Atrium and which, by its express terms and surrounding circumstances, provides retirement income to employees and/or results in the deferral of income by employees to the termination of their employment or beyond.

124.     The 401(k) Plan is a defined contribution plan (rather than a defined benefit plan) under ERISA § 3(34), 29 U.S.C. § 1002(34) because the plan provides for an individual account for each participant and provides benefits based solely upon the amount contributed to a participant's account.

125.     In general, 401(k) plans are participant-directed investment accounts where the participant selects the investments for her retirement savings.

126.     But Defendants fail to operate the 401(k) Plan in accordance with ERISA because they maintain that it is an exempt Governmental Plan.

127.     Participants are harmed by the failure to operate the 401(k) Plan in accordance with ERISA.

128.     The disclosure regulations are meant to give participants information they need about the performance and expenses related to their investments so that participants can make sound investment decisions for their retirement savings.  But the 401(k) Plan does not comply with the reporting and disclosure provisions of ERISA.

129.     The 401(k) Plan does not provide participants with summary plan descriptions compliant with ERISA.  ERISA § 104, 29 U.S.C. § 1024.

130.     The 401(k) Plan does not make the latest annual report required by ERISA available to participants.  ERISA § 104; 29 U.S.C. § 1024.

131.     The 401(k) Plan does not file Form 5500 with the Department of Labor.  *See* ERISA §§ 101, 104, 29 U.S.C. §§ 1021, 1024.

**3.      The Health Plan**

132.     The Health Plan is an employee welfare benefit plan covering substantially all of Atrium's employees.

133.     The Health Plan meets the definition of an "employee welfare benefit plan" under ERISA, 29 U.S.C. § 1002(1), because it is a plan, fund, or program which was established or maintained by an employer for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits.

134.     Defendants fail to operate the Health Plan in accordance with ERISA because they maintain that it is an exempt Governmental Plan.

135.     Participants are harmed by the failure to operate the Health Plan in accordance with ERISA.

136.    The Health Plan does not file Form 5500 with the Department of Labor.

137.    Because the Health Plan is governed by ERISA, the Health Plan fiduciaries may not engage in transactions prohibited by ERISA § 406, 29 U.S.C. § 1106.

138.    The Health Plan contracts with MedCost LLC to provide network services to participants and MedCost Benefit Services, LLC (collectively, "MedCost") as a third-party administrator for the self-insured Health Plan.

139.    Atrium owns 50% of MedCost LLC.  Because MedCost is a subsidiary of Atrium, it meets the definition of party-in-interest under ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G).

140.    Upon information and belief, Atrium knew that Atrium would be the largest provider of medical services under the Health Plan.

141.    Upon information and belief, the Health Plan paid far greater amounts to Atrium for medical services rendered through the MedCost network than the Plan would pay under other managed care networks, such as Blue Cross Blue Shield of North Carolina.  Upon information and belief, there is no difference in quality between MedCost and alternate networks that would justify the selection of MedCost.

142.    Upon information and belief, MedCost charges Health Plan participants and beneficiaries more for co-insurance and deductibles than alternate cheaper networks.

143.    Upon information and belief, MedCost returns higher reimbursements to Atrium from the Health Plan in comparison to alternate managed care networks.

144.    Upon information and belief, Atrium offered other employers who used the MedCost network for services at Atrium greater discounts than the discounts it offered to its employees in the Health Plan.  Atrium offered lesser discounts for the Health Plan because the Health Plan was "captive"—Atrium selected the network provider for the Health Plan, so there

was no chance that the Health Plan would switch away from the network provider MedCost, and thus Atrium did not need to offer the Health Plan the same discounts as it offered to other employers.

145. Moreover, as a third-party administrator for the Health Plan, MedCost receives a portion of Health Plan assets as administrative costs. Because MedCost is 50% owned by Atrium, these Health Plan assets benefit Atrium.

146. Under ERISA, these transactions between Atrium and MedCost violate the prohibited transactions provision of ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b), as set forth in greater detail in the Counts listed below.

### 4. Fiduciaries of the Plans

#### a. Nature of Fiduciary Status

147. **Named Fiduciaries**. Every ERISA plan must have one or more "named fiduciaries." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The person named as the "administrator" in the plan instrument is automatically a named fiduciary and, in the absence of such a designation, the sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

148. **De Facto Fiduciaries**. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he

has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

149.    The Fiduciary Defendants are all fiduciaries with respect to at least one of the Plans and owed fiduciary duties to that Plan and its participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plans' documents and/or through their conduct. As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plans and the Plans' investments solely in the interest of the Plans' participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

150.    Plaintiffs do not allege that each Fiduciary Defendant was a fiduciary with respect to all aspects of the Plans' management and administration.  Rather, as set forth below, Fiduciary Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

151.    ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the Plan sponsor.

### b.    Defendants Are ERISA Fiduciaries

152.    **<u>Defendant Atrium</u>**. Atrium is the employer responsible for maintaining the Atrium Pension Plan, the 401(k) Plan, and the Health Plan, and is, therefore, the plan sponsor of the Plans within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Upon information

and belief, Defendant Atrium's responsibilities include fiduciary oversight of the Plans. Upon information and belief, Defendant Atrium had the responsibility to appoint, and hence to monitor and remove, the members of the Retirement Committee. Upon information and belief, Atrium also serves as a Plan Administrator of the Health Plan sufficient to meet the requirements of ERISA § 402, 29 U.S.C. § 1102.

153.    Defendant Atrium is a fiduciary with respect to the Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the Plans, exercises authority and control respecting management or disposition of the Plans' assets, and/or has discretionary authority or discretionary responsibility in the administration of the Plans.

154.    **<u>Retirement Committee Defendants</u>**.  The terms of the instrument, or instruments, under which the 401(k) Plan and Pension Plan are operated specifically designate Defendant Retirement Committee as a Plan Administrator sufficient to meet the requirements of ERISA § 402, 29 U.S.C. § 1102.

155.    Defendant Atrium Retirement Committee and Defendants John and Jane Does 1-20, as members of the Retirement Committee, are also fiduciaries with respect to the Pension Plan and 401(k) Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the Pension Plan and 401(k) Plan, exercise authority and control respecting management or disposition of the Pension Plan and 401(k) Plan's assets, and/or have discretionary authority or discretionary responsibility in the administration of the Pension Plan and 401(k) Plan.

156.     **Defendants John and Jane Does 41-60**.  Plaintiffs reserve the right to amend this Complaint to name other or additional Defendants who serve a fiduciary function once they have had the opportunity to conduct discovery on these issues.

## VI.     CLASS ALLEGATIONS

157.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following Class of persons similarly situated:

> All participants and/or beneficiaries of the Plans (as defined above).

158.     The Class is further divided into three subclasses.

159.     The first subclass relates to the Pension Plan and is defined as follows: All participants and/or beneficiaries of the Pension Plan (as defined above).

160.     The second subclass relates to the 401(k) Plan and is defined as follows:  All participants and/or beneficiaries of the 401(k) Plan (as defined above).

161.     The third subclass relates to the Health Plan and is defined as follows:  All participants and/or beneficiaries of the Health Plan (as defined above).

162.     Excluded from the Class are any high-level executives at Atrium or any employees who have responsibility or involvement in the administration of the Plans, or who are subsequently determined to be fiduciaries of the Plans, including the Individual Defendants.

## A.     Numerosity

163.     The exact number of members in the Class is unknown to Plaintiffs at this time, but may be readily determined from records maintained by Atrium. Atrium currently employs over 65,000 individuals.  Many, if not all, of those persons are likely members of one or more subclasses, and thus the Class is so numerous that joinder of all members is impracticable.

**B. Commonality**

164. The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plans are exempt from ERISA as Governmental Plans, and, if not, (2) whether the fiduciaries of the Plans have failed to administer and failed to enforce the obligations of the Plans in accordance with ERISA.

165. The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plans are ERISA Plans; and (2) an order requiring that the Plans comply with the administration and enforce the obligations of the operative Plans in accordance with ERISA.

**C. Typicality**

166. Plaintiffs' claims are typical of the claims of the other members of each subclass because their claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain each Plan in accordance with ERISA. Plaintiffs' claims are also typical because the members of each subclass are similarly affected by Defendants' wrongful conduct.

167. Plaintiffs' claims are also typical of the claims of the other members of each subclass because, to the extent Plaintiffs seek equitable relief, it will affect the members of each subclass equally. Specifically, the equitable relief sought consists primarily of (i) a declaration that the Plans are not Governmental Plans; and (ii) injunctive relief requiring Defendants to comply with the requirements of ERISA.

168. Atrium does not have any defenses unique to Plaintiffs' claims that would make Plaintiffs' claims atypical of the remainder of the Class.

**D.    Adequacy**

169.    Plaintiffs will fairly and adequately represent and protect the interests of the Class members and do not have any interests antagonistic to or in conflict with the interests of the Class.

170.    Defendant Atrium, Defendant MedCost and the Individual Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Classes.

171.    Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.    Rule 23(b)(1) Requirements**

172.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

173.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.    Rule 23(b)(2) Requirements**

174.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.    Rule 23(b)(3) Requirements**

175.    If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the Plans are exempt from ERISA as Governmental Plans, and, if not, (2) whether the fiduciaries of the Plans have failed to administer the Plans in accordance with ERISA. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

        A.    Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plans or affect members of each class equally;

        B.    Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

        C.    There is no other litigation begun by any other Class members concerning the issues raised in this litigation;

        D.    This litigation is properly concentrated in this forum, which is where Defendant Atrium is headquartered; and

        E.    There are no difficulties managing this case as a class action.

## VII.   <u>CAUSES OF ACTION FOR ALL PLANS</u>

### COUNT I
(Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against Defendant Atrium, Defendant Atrium Retirement Committee and Defendants John and Jane Does 1-20)

176.     Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

177.     Plaintiffs bring this claim on behalf of the Pension Plan, 401(k) Plan, and Health Plan.

178.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief ... to enforce any provisions of this title." Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the Atrium Plans are not Governmental Plans within the meaning of ERISA § 3(32), 29 U.S.C. § 1002(32), and thus are subject to the provisions of Title I and Title IV of ERISA.

179.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to these provisions, Plaintiffs seek orders directing the Atrium Plans' sponsor and administrator to bring the Plans into compliance with ERISA.

180.     ERISA § 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." The operation of the Plans as

non-ERISA plans was a breach of Defendants' fiduciary duties. Plaintiffs also seek plan-wide equitable and remedial relief under ERISA § 502(a)(2) for those fiduciary breaches.

181.    The Plans are not Governmental Plans within the meaning of ERISA § 3(32), 29 U.S.C. § 1002(32). The Pension Plan meets the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2); the 401(k) Plan meets the definition of a pension plan under ERISA § 3(2) , 29 U.S.C. § 1002(2); the Health Plan meets the definition of a welfare benefit plan under ERISA § 3(1), 29 U.S.C. § 1002(1). Thus, the Plans should be declared to be ERISA-covered plans and the Plans' sponsors and administrators should be ordered to bring the Plans into compliance with ERISA, including by remedying the violations set forth below.

## COUNT II
(Claim for Breach of Fiduciary Duties to the Plans Against All Fiduciary Defendants)

182.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

### Breach of Fiduciary Duties

183.    Plaintiffs bring this claim on behalf of the Pension Plan, 401(k) Plan, and Health Plan for breach of fiduciary duty pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

184.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)    for the exclusive purpose of:

    (i)    providing benefits to participants and beneficiaries; and

    (ii)    defraying reasonable expenses of administering the plan;

(b)    with the care, skill, prudence and diligence under the circumstances then

    prevailing that a prudent man acting in a like capacity and familiar with such

matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

(c)      in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

185.    As fiduciaries with respect to the Plans, Defendants had the responsibility to comply with each provision of ERISA alleged to have been violated in the following paragraphs. ERISA §§ 404(a)(1)(A)–(D), 29 U.S.C. §§ 1104(a)(1)(A)–(D) imposed on Defendants the respective duty to enforce the provisions of ERISA in the interest of the participants and beneficiaries of the Plans during the times that each was a fiduciary of the Plans.

186.    The failure of Defendants to enforce the ERISA obligations owed to the Pension Plan (Counts III–VI *infra*), including funding obligations, proper vesting schedules, reporting obligations, and prohibitions on particular transactions, has decreased the security of participants' pension benefits, has forfeited pension benefits of some participants, and has resulted in loss to the Pension Plan.  *See* Causes of Action for the Pension Plan, *infra*.

187.    The failure of Defendants to enforce the ERISA obligations owed to the 401(k) Plan (Count VII *infra*) has decreased the transparency surrounding the costs and performance associated with participants' investments. *See* Causes of Action for the 401(k) Plan, *infra*.

188.    The failure of Defendants to enforce the ERISA obligations owed to the Health Plan (Count VIII *infra*) has resulted in excessive co-payments and deductibles to Plan participants, which would have been less with the selection of an alternate network provider. Defendant Atrium also received greater reimbursements and revenue due to the selection of

MedCost as the network provider for the Health Plan at the expense of Plan participants. *See* Causes of Action for the Health Plan, *infra*.

189.     Defendants' failure to enforce the provisions of ERISA set forth in Counts III–VIII resulted in a breach of Defendants' fiduciary duties of prudence and loyalty that they owed to Plaintiffs and the Class.

### Failure to Monitor Fiduciaries

190.     This sub-Count alleges fiduciary breach against Defendant Atrium.

191.     As alleged above, during the Class Period, Defendant Atrium was a named fiduciary pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or a de facto fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, it was bound by the duties of loyalty, exclusive purpose, and prudence.

192.     The scope of the fiduciary responsibilities of Atrium included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

193.     Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries perform their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

194.     The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a prudent process for monitoring their appointees, the appointing fiduciaries would have no sound basis to conclude that their

appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove the appointees.

195.     Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

196.     Defendant Atrium breached its fiduciary monitoring duties by, among other things:  (a) failing to appoint persons who would run the Plans as ERISA plans; (b) failing to ensure that the monitored fiduciaries appreciated the impact of not operating the Plans as ERISA Plans; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plans; and (d) failing to remove appointees whose performance was inadequate in that they continued to run the Plans as non-ERISA Plans, and who breached their fiduciary duties under ERISA.

197.     The failure of Defendants to enforce the provisions of ERISA have resulted in losses to participants in the Plans and profited Defendant Atrium.

**Co-Fiduciary Liability**

198.     This sub-Count alleges co-fiduciary liability against Defendants Atrium, Atrium Retirement Committee, and John and Jane Does 1–20.

199.     As alleged above, these Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or de facto fiduciaries within the meaning of ERISA §

3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

200.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach. These Defendants breached the following three provisions.

201.    **Knowledge of a Breach and Failure to Remedy**. ERISA § 405(a)(3), 29 U.S.C. § 1105, imposes co-fiduciary liability on a fiduciary for the breach by another fiduciary, if he has knowledge of such breach, unless he makes reasonable efforts under the circumstances to remedy the breach. Each of the Defendants knew of the breaches by the other fiduciaries and made no efforts to remedy those breaches.

202.    Because Defendants knew that the Plans were not being run as ERISA Plans, Defendants knew that the other Defendants were breaching their duties by not complying with ERISA. Yet, they failed to undertake any effort to remedy these breaches.

203.    **Knowing Participation in a Breach**. ERISA § 405(a)(1), 29 U.S.C. § 1105(1), imposes liability on a fiduciary for a breach of fiduciary responsibility by another fiduciary with respect to the same plan if he knowingly participates in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. Defendant Atrium knowingly participated in the fiduciary breaches of the other Defendants in that it benefited from the Plans not being run as ERISA Plans.

204.    **Enabling a Breach**. ERISA § 405(a)(2), 29 U.S.C. § 1105(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the

CLASS ACTION COMPLAINT
PAGE - 35

administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

205.     The failure of Defendant Atrium to monitor Defendant Atrium Retirement Committee enabled that committee to breach its duties, leading to the ERISA violations alleged *infra* to each of the Plans.

206.     Plaintiffs and the Class seek an Order requiring the Fiduciary Defendants to make the Plans whole for any losses and disgorge any ill-gotten gains accumulated as a result of fiduciary breaches.

## CAUSES OF ACTION FOR THE PENSION PLAN

### COUNT III
(Claim for Failure to Provide Minimum Funding Against Defendant Atrium)

207.     Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

208.     Plaintiffs bring this claim on behalf of the Pension Plan.

209.     ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions so that a plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

210.     Atrium was responsible for making the contributions to the Pension Plan that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

211.     Atrium has failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

212.    This harms Pension Plan participants by increasing the risk of the default of the Plan and reduction of their accrued benefits.

213.    By failing to make the required contributions to the Pension Plan, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA § 302, Defendant Atrium has violated ERISA § 302. 29 U.S.C. § 1082.

214.    Plaintiffs and the Class seek an Order requiring, among other things, the Pension Plan to comply with the funding requirements of ERISA.

**COUNT IV**
(Claim for Violation of ERISA § 203 and for Equitable Relief Pursuant to ERISA §§ 502(a)(3) and 502(a)(2) Against Defendants Atrium, Atrium Retirement Committee, and John and Jane Does 1–20)

215.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

216.    Plaintiffs bring this claim on behalf of the Pension Plan.

217.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

218.    The Pension Plan violates ERISA §§ 203(a)(2) and (f)(2), 29 U.S.C. §§ 1053(a)(2) and (f)(2), because it is a cash balance plan and may not require a participant to complete more than three years of service to become fully vested in her benefits under the Plan.

219.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order that all participants in the Pension Plan who have completed three years of service are fully vested in their accrued benefits under that plan.

220.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring the Plan administrator to furnish all participants in the Pension Plan with a benefit statement that is compliant with ERISA and that states their vested retirement benefit based on a three-year vesting period.

221.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order directing the Pension Plan sponsor and administrator to retroactively amend and/or reform the Pension plan to comply with ERISA § 203(f)(2), 29 U.S.C. § 1053(f)(2), which requires that any employee who has completed at least three years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.

222.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek an order requiring the Plan sponsor to contribute additional funding to the Pension Plan, as required by ERISA § 302, 29 U.S.C. § 1052, to cover the additional Plan liabilities resulting from the accrued benefits owed to all participants who have completed three years of service but less than five years of service and therefore to date have not been considered to be fully vested in their accrued benefits under the Pension Plan.

223.     The Plan administrator, Atrium Retirement Committee, has violated ERISA § 404(a)(1)(D), 29 U.S.C. §1004(a)(1)(D), to the extent it has followed Plan documents that are inconsistent with ERISA.  As such, Atrium is liable for any losses to the participants under ERISA §502(a)(3), 29 U.S.C. § 1132(a)(3) for all losses or to provide appropriate equitable relief to remedy their violations of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

224.     Plaintiffs also seek to disgorge any ill-gotten gains or cost savings received by Defendants as a result of the impermissible vesting schedule pursuant to ERISA §§ 502(a)(2), 29 U.S.C. § 1132(a)(2) and 502(a)(3), 29 U.S.C. § 1132(a)(3).

## COUNT V

(Claim for Violation of Reporting and Disclosure Provisions Against Defendant Atrium Retirement Committee and John and Jane Does 1-20, the Committee Member Defendants)

225.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

226.    Plaintiffs bring this claim on behalf of the Pension Plan.

**1.    Summary Plan Descriptions**

227.    At no time has the Committee or its members provided Plaintiffs or any member of the Class with a Summary Plan Description with respect to the Pension Plan that meets the requirements of ERISA § 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

228.    Because the Committee has been the Plan Administrator of the Plans at all relevant times, it violated ERISA § 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

**2.    Annual Reports**

229.    At no time has an annual report with respect to the Pension Plan been filed with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, nor has it filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

230.    Because the Committee has been the Plan Administrator of the Pension Plan at all relevant times, the Committee Defendants have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Pension Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments, which the Secretary has approved as an alternate method of compliance with ERISA § 103, 29 U.S.C. § 1023.

3. **Summary Annual Reports**

231.    At no time has the Committee or its members furnished Plaintiffs or any member of the Class with a Summary Annual Report with respect to the Pension Plan in compliance with ERISA § 104(b)(3) and regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

232.    Because the Committee has been the Plan Administrator of the Pension Plan at all relevant times, the Committee Defendants have violated ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiffs or any member of the Class with a Summary Annual Report with respect to the Pension Plan in compliance with ERISA § 104(b)(3) and the regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

4. **Notification of Failure to Meet Minimum Funding**

233.    At no time has Atrium furnished Plaintiffs or any member of the Class with a Notice with respect to the Pension Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Atrium had failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082, with respect to the Pension Plan.

234.    Atrium is the employer that established and/or maintained the Pension Plan.

235.    Atrium is not funding the Pension Plan in accordance with ERISA § 302, 29 U.S.C. § 1082.

5. **Funding Notices**

236.    At no time has the Committee or its members furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the Pension Plan pursuant to ERISA § 101(f), 29 U.S.C. § 1021(f).

6. **Pension Benefit Statements**

237. At no time has the Committee furnished Plaintiffs, or, on information and belief, any member of the Class with a Pension Benefit Statement with respect to the Pension Plan pursuant to ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

238. Plaintiffs and the Class seek an Order directing the Fiduciary Defendants to comply with the reporting and disclosure provisions of ERISA.

**COUNT VI**
(Claim for Engaging in Prohibited Transactions in Violation of ERISA §§ 406(a)(1)(B), (D), 406(b)(1) Against Defendants Atrium, Atrium Retirement Committee, and John and Jane Does 1–20)

239. Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

240. Plaintiffs bring this claim on behalf of the Pension Plan.

241. ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

242. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

243. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan for his or her own interest or for his or her own account.

244. ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) prohibits a fiduciary from receiving any consideration for his personal account from any party dealing with the plan in connection with a transaction involving the assets of the plan.

CLASS ACTION COMPLAINT
PAGE - 41

245.	Defendants engaged in prohibited transactions under ERISA §§ 406(a)(1)(B), (a)(1)(D), (b)(1), and (b)(3), 29 U.S.C. §§ 1106(a)(1)(B), (a)(1)(D), (b)(1), and (b)(3), as described *infra*.

246.	As fiduciaries with respect to the Pension Plan, with respect to Atrium, as an employer of employees covered by the Pension Plan, the Defendants at all relevant times were parties in interest with respect to the Pension Plan pursuant to ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

247.	With respect to the Pension Plan, by failing to enforce the ERISA funding owed to the Pension Plan, Defendants extended credit from the Pension Plan to Atrium in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

248.	By failing to enforce the ERISA funding obligations owed to the Pension Plan, Defendants used Pension Plan assets for Atrium's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Pension Plan assets, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

249.	By failing to enforce the ERISA funding obligations owed to the Pension Plan, Defendants used Pension Plan assets in Atrium's interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

250.	The failure of Defendants to enforce the ERISA funding obligations owed to the Pension Plan has resulted in a loss to the Pension Plan and its participants equal to the foregone funding and earnings thereon.  The failure of Defendants to enforce the funding obligations owed to the Pension Plan has profited Defendant Atrium by providing it the use of money owed to the Pension Plan for its general business purposes.

251.    Plaintiffs and the Class seek an Order requiring Atrium to unwind all prohibited transactions as alleged in the Complaint.

## CAUSES OF ACTION FOR THE 401(K) PLAN

### COUNT VII
(Claim for Violation of Reporting and Disclosure Provisions Against Defendants Atrium Retirement Committee and John and Jane Does 1-20, the Committee Member Defendants)

252.    Plaintiffs incorporate and re-allege by reference the foregoing paragraphs as if fully set forth herein.

253.    Plaintiffs bring this claim on behalf of the 401(k) Plan.

**1.    Summary Plan Descriptions**

254.    At no time has the Committee or its members provided Plaintiffs or any member of the Class with a Summary Plan Description with respect to the 401(k) Plan that meets the requirements of ERISA § 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

255.    Because the Committee has been the Plan Administrator of the 401(k) Plan at all relevant times, it violated ERISA § 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

**2.    Annual Reports**

256.    At no time has an annual report with respect to the 401(k) Plan been filed with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, nor has the 401(k) Plan filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

257.    Because the Committee has been the Plan Administrator of the 401(k) Plan at all relevant times, the Committee Defendants have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the 401(k) Plan with the Secretary of Labor in

compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments, which the Secretary has approved as an alternate method of compliance with ERISA § 103, 29 U.S.C. § 1023.

### 3. Summary Annual Reports

258.    At no time has the Committee or its members furnished Plaintiffs or any member of the Class with a Summary Annual Report with respect to the 401(k) Plan in compliance with ERISA § 104(b)(3) and regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

259.    Because the Committee has been the Plan Administrator of the 401(k) Plan at all relevant times, the Committee Defendants have violated ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiffs or any member of the Class with a Summary Annual Report with respect to the 401(k) Plan in compliance with ERISA § 104(b)(3) and the regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

260.    Plaintiffs and the Class seek an Order directing the Fiduciary Defendants to comply with the reporting and disclosure provisions of ERISA.

## CAUSES OF ACTION FOR THE HEALTH PLAN

### COUNT VIII
(Claim for Engaging in Prohibited Transactions in violation of ERISA §§ 406(a)(1)(D), 406(b)(1) & (3) Against Defendants Atrium and MedCost)

261.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

262.    Plaintiffs bring this claim on behalf of the Health Plan.

263.    ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), prohibits furnishing of goods, services, or facilities between the plan and a party in interest.

264. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

265. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan for his or her own interest or for his or her own account.

266. ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) prohibits a fiduciary from receiving any consideration for his personal account from any party dealing with the plan in connection with a transaction involving the assets of the plan.

267. With respect to the Health Plan, Defendant MedCost is a party in interest as "as corporation, partnership, or trust or estate of which (or in which) 50 percent or more of" the corporation is owned by Atrium, a plan fiduciary. ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G).

268. Defendant Atrium caused the Health Plan to enter into prohibited transactions under ERISA §§ 406(a)(1)(C), 406(a)(1)(D), 406(b)(1), 29 U.S.C. §§ 1106(a)(1)(C), 1106(a)(1)(D), 1106(b)(1), by entering into an agreement with Defendant MedCost, a party in interest, to provide network and administrative services. Defendant Atrium paid Defendant MedCost for administrative services using Plan assets, and paid itself for medical services rendered to Plan participants and beneficiaries with Plan assets. These payments of Plan assets to Atrium and MedCost were prohibited transactions in violation of ERISA §§ 406(a)(1)(D), 406(a)(1)(C), 406(b)(1), 29 U.S.C. §§ 1106(a)(1)(D), 1106(a)(1)(C), 1106(b)(1) and the payments are not exempted under ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2) or any other exemption to the prohibited transaction provisions.

269. Defendant Atrium caused the Health Plan to enter into prohibited transactions under ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), which prohibits a fiduciary from receiving any consideration from a party dealing with the Health Plan in connection with a transaction involving Health Plan assets. Defendant Atrium, a Health Plan fiduciary, received consideration when a Plan participant sought healthcare services at Atrium. Specifically, Defendant Atrium received co-payments from Health Plan participants in addition to the payment from the Plan for healthcare services rendered by Atrium. Atrium also received payments from Plan participants for deductibles. These payments, in connection with a transaction involving Health Plan assets, constituted prohibited transactions in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

270. Defendant Atrium's selection of Defendant MedCost as a network provider for the Health Plan resulted in excessive co-payments and deductibles to Health Plan participants, which would have been less with the selection of an alternate network provider. Defendant Atrium also received greater reimbursements and revenue due to the selection of MedCost as the network provider for the Health Plan at the expense of Plan participants.

271. By failing to enforce the prohibited transactions provisions of ERISA, Defendants forced Health Plan participants to make greater payments to the Health Plan, while receiving greater reimbursement and revenue, in violation of ERISA § 406(a)(1)(D), (b)(1), (b)(3), 29 U.S.C. § 1106(a)(1)(D), (b)(1), (b)(3).

272. Plaintiffs and the Class seek an Order requiring Atrium to unwind all prohibited transactions as alleged in the Complaint which would include return to the Health Plan of all payments of Health Plan assets made to Atrium or MedCost as well as return to participants and beneficiaries all co-insurance, co-payments, and deductibles paid to Atrium.

# VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants on all claims and requests that the Court award the following relief:

A.      Declaring that the Plans are employee benefit plans within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2); that the Pension Plan is a defined benefit pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35); that the 401(k) Plan is a defined contribution plan within the meaning of ERISA § 3(34) 29 U.S.C. § 1002(34); that the Health Plan is an employee welfare plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1); and that all Plans are not Governmental Plans within the definition of ERISA § 3(32), 29 U.S.C. § 1002(32).

B.      Ordering Atrium to reform the Plans to bring them into compliance with ERISA, including as follows:

1.      Revising the Pension Plan documents to reflect that the Pension Plan is a defined benefit plan governed by ERISA; revising the 401(k) Plan documents to reflect that the 401(k) plan is a defined contribution plan governed by ERISA; and revising the Health Plan documents to reflect that that the Health Plan is a health and welfare plan governed by ERISA.

2.      Requiring Atrium to disclose required information to the participants and beneficiaries of the Plans, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

3.      Requiring Atrium to unwind all prohibited transactions as alleged in the Complaint which would include return to the Health Plan of all payments of Health Plan

assets made to Atrium or MedCost as well as return to participants and beneficiaries all

co-insurance, co-payments, and deductibles paid to Atrium;

      4.      Requiring Atrium to fund the Pension Plan in accordance with ERISA;

      5.      Requiring Atrium to retroactively reform its vesting schedule for the

Pension Plan and issue statements to participants in the Pension Plan with more than

three but fewer than five years of service, informing them of their current benefit;

      6.      Requiring Atrium to comply with ERISA reporting and disclosure

requirements for all Plans, including by filing Form 5500 reports, distributing ERISA-

compliant Summary Plan Descriptions, Summary Annual Reports, and ERISA-compliant

Participant Benefit Statements, as to all Plans, and providing Notice of the Pension Plan's

funding status and deficiencies.

      C.      Requiring Atrium, as a fiduciary of the Plans, to make the Plans whole for any

losses and disgorge any ill-gotten gains accumulated as a result of fiduciary breaches.

      D.      Appointing an Independent Fiduciary to manage and administer the Health Plan

and its assets, and to enforce the terms of ERISA.

      E.      Ordering declaratory and injunctive relief as necessary and appropriate, including

enjoining the Defendants from further violating the duties, responsibilities, and obligations

imposed on them by ERISA with respect to the Plans.

      F.      Awarding to Plaintiffs attorneys' fees and expenses as provided by the common

fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

      G.      Awarding to Plaintiffs taxable costs pursuant to ERISA § 502(g), 29 U.S.C. §

1132(g), 28 U.S.C. § 1920, and other applicable law.

H.     Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to law.

I.     Awarding, declaring or otherwise providing Plaintiffs and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

DATED: November 19, 2018.                    _____/s/ *Martha Geer*_____

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Martha Geer
N.C. Bar No. 13972
150 Fayetteville Street
Suite 980
Raleigh, NC 27601
Tel: (919) 890-0560
Fax: (919) 890-0567
mgeer@cohenmilstein.com

Karen L. Handorf
Julie Goldsmith Reiser
Jamie Bowers
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699
khandorf@cohenmilstein.com
jreiser@cohenmilstein.com
jbowers@cohenmilstein.com

***Attorneys for Plaintiffs***