IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DELLA SHORE, LISA ENGEL, MARK          )
RACZ, MICHAEL SCHWOB, AND              )
LYDIA WALKER, on behalf of             )
themselves, individually, and          )
on behalf of all others               )
similarly situated, and on            )
behalf of the Atrium Plans,           )
                                       )
            Plaintiffs,                )
                                       )
      v.                               )        1:18-CV-00961
                                       )
THE CHARLOTTE-MECKLENBURG              )
HOSPITAL AUTHORITY, ATRIUM             )
HEALTH RETIREMENT COMMITTEE,           )
JOHN AND JANE DOES 1-20,               )
MEMBERS OF THE ATRIUM HEALTH           )
RETIREMENT COMMITTEE, EACH AN          )
INDIVIDUAL, MEDCOST, LLC AND           )
MEDCOST BENEFIT SERVICES, LLC,         )
                                       )
            Defendants.                )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This is a putative class action against The Charlotte-Mecklenburg Hospital Authority, the Atrium Health Retirement Committee (collectively the "Authority"), John and Jane Does 1-20,[1] MedCost, LLC, and MedCost Benefit Services, LLC (collectively

---

[1] Plaintiffs identify John and Jane Does 1-20 as members of the Atrium Retirement Committee (Doc. 1 ¶ 29), John and Jane Does 1-40 as "individuals who, through discovery are found to have fiduciary responsibilities with respect to the Plans and are fiduciaries within the meaning of ERISA" (id. ¶ 33), and John and Jane Does 41-60 as "other or additional Defendants who serve a fiduciary function" who the Plaintiffs will add to the complaint through amendment "once they have had the opportunity to conduct discovery on these issues" (id. ¶ 156).

"MedCost") for alleged noncompliance with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Doc. 1 ¶¶ 1-15.) The action is brought by former Authority employees who allege that they participated in the Authority's employee benefit plans which should have complied with ERISA requirements. Plaintiffs allege several claims flowing from a contention that the plans are subject to ERISA and seek a declaration they are covered plans and an order that they be brought into compliance with the law. (Id. ¶ 15.)

Before the court are the motions of the Authority (Doc. 28) and MedCost to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 31.) Defendants move in the alternative to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[2] (Docs. 28, 31.)

---

Plaintiffs have made no argument that the various Doe Defendants have any liability different from that of the other Defendants such that resolution of the Authority's and MedCost Defendants' motions to dismiss would not also resolve the claims against them.

[2] The Fourth Circuit has not resolved whether governmental plan status should be resolved under Rule 12(b)(6) or Rule 12(b)(1). District courts in the Fourth Circuit have taken both approaches. Compare Davenport v. Anne Arundel Cty. Bd. of Educ., No. GLR-12-1335, 2012 WL 6043641, at *6 (D. Md. Dec. 4, 2012) (12(b)(6)), and Johnson v. North Carolina, 905 F. Supp. 2d 712, 722 (W.D.N.C. 2012) (same), with Rowe v. Rector & Visitors of Univ. of Va., No. 3:06CV00055, 2007 WL 315803, at *3 (W.D. Va. Jan. 30 2007) (12(b)(1)), and Sculthorpe v. Va. Retirement Sys., 952 F. Supp. 307, 310 (E.D. Va. 1997) (same). Several courts have held that governmental plan status should be resolved under Rule 12(b)(6). See e.g., Smith v. Reg'l Transit Auth., 756 F.3d 340, 346-47 (5th Cir. 2014); Mansfield v. Chi. Park Dist. Grp. Plan, 946 F. Supp. 586, 591 (N.D. Ill.

MedCost's brief "adopts and incorporates by reference the facts, authorities, and arguments" set forth in the Authority's brief in support of its motion to dismiss. (Doc. 32 at 1.)  Plaintiffs filed a consolidated response. (Doc. 34.)  Because the claims against both the Authority and MedCost fail as a matter of law if the Authority's plans are governmental plans, resolution of the Authority's motion will resolve all Defendants' motions.  The motions are fully briefed and ready for decision. (Docs. 30, 32, 34, 39.)  For the reasons that follow, Defendants' motions will be granted and the complaint will be dismissed.

## I.  BACKGROUND

The Authority is a non-profit healthcare conglomerate headquartered in Mecklenburg County, North Carolina. (Doc. 1 ¶ 3.) It established and maintains three employee benefit plans: the Pension Plan of the Charlotte-Mecklenburg Hospital Authority

---

1996).  In an unpublished per curiam decision, the Fourth Circuit stated that governmental plan status is relevant to whether the court had subject matter jurisdiction.  <u>Morgan Cty. War Mem'l Hosp. ex rel. Bd. of Dirs. Of War Mem'l Hosp. v. Baker</u>, 314 F. App'x 529, 534 (4th Cir. 2008) (per curiam).  Unpublished decisions of the Fourth Circuit are not precedential and are generally accorded the weight of their persuasive reasoning.  <u>See</u> <u>Collins v. Pond Creek Mining Co.</u>, 468 F.3d 213, 219 (4th Cir. 2006).  Because Defendants assume Plaintiffs' allegations to be true (Doc. 30 at 8 n.3), the standards for both rules are the same.  <u>See</u> <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982) (noting that, where it's argued that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based[,]" all the facts alleged in the complaint "are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration").  Therefore, because whether the motion proceeds under Rule 12(b)(1) or 12(b)(6) will not affect the outcome of this decision and because both parties briefed the motion under the latter, the court will treat it as one under Rule 12(b)(6).

("Pension Plan"), the Carolinas HealthCare System 401(k) Matched Savings Plan ("401(k) Plan"), and the Carolinas HealthCare System LiveWELL Health Plan ("Health Plan") (collectively, "the Plans"). (Id.)

The City of Charlotte created the Authority in 1943 pursuant to the Hospital Authority Act ("HAA"), N.C. Gen. Stat. §§ 131E-15 to 131E-33, which authorizes cities and counties to create hospital authorities "whenever a city council or a county board of commissioners finds and adopts a resolution finding that it is in the interest of the public health and welfare to create a hospital authority." N.C. Gen. Stat. § 131E-17(a). (Doc. 29-1.) The Authority is registered as a "municipal" body. (Doc. 29-2.)

The Authority is governed by the Board of Atrium Commissioners (the "Board" or "commissioners"). (Doc. 1 ¶ 41.) The Mayor of Charlotte appointed the Authority's original commissioners, who took an oath to support the state and federal constitutions. (Doc. 29-1.) To appoint new Board members, the Board submits a list of nominees to the Chairman of the County Commissioners, and the chairman appoints commissioners from that list. (Doc. 1 ¶¶ 49-51.) The chairman "may require the commissioners to submit as many additional lists of nominees as he or she may desire." N.C. Gen. Stat. § 131E-18(d). The chairman can remove the commissioners for inefficiency, neglect of duty, or misconduct in office, after notice and a hearing, and is required to remove any commissioner

who, after notice and a hearing, is found to have acquiesced in any willful violation by the Authority of state law or of any contract to which the Authority is a party. N.C. Gen. Stat. §§ 131E-22(a)-(b).

The Authority is granted "all powers necessary or convenient to carry out the purposes of [the Act]." N.C. Gen. Stat. § 131E-23(a). The Authority has the power of eminent domain, N.C. Gen. Stat. § 131E-24(a), may issue tax-exempt bonds, N.C. Gen. Stat. §§ 105-153.5(b)(1)(d), 131E-26(a), 159-81(1), 159-84, is not subject to tax on real property, personal property, or motor fuel, N.C. Gen. Stat. §§ 105-278.1(c)(3)(c), 105-449.88(10), and is not subject to federal or state income tax or state franchise tax. (Doc. 29-3.) The commissioners of the Authority's board may not be compensated for their services. N.C. Gen. Stat. § 131E-18(f). The Authority is also subject to open meetings laws and public records laws. N.C. Gen. Stat. §§ 143-318.10, 132-1.

## II.  ANALYSIS

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v.</u>

<u>Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u> <u>Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor. <u>Ibarra v. United States</u>, 120 F.3d 472, 474 (4th Cir. 1997). "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" <u>Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ.</u>, 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (alterations in original) (quoting <u>Twombly</u>, 550 U.S. at 555). Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion, <u>see</u> Fed. R. Civ. P. 12(d); <u>Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004), "the court can consider 'documents attached to the complaint, documents incorporated by reference in

the complaint, or matters of judicial notice' without converting a motion to dismiss into one for summary judgment." Plymouth Cty. Ret. Ass'n v. Primo Water Corp., 966 F. Supp. 2d 525, 536 (M.D.N.C. 2013) (quoting Sun Chem. Trading Corp. v. CBP Res., Inc., No. 1:01CV00425, 2004 WL 1777582, at *3 (M.D.N.C. July 29, 2004)). A court may consider facts and documents subject to judicial notice, provided that the court construe such facts in the light most favorable to the non-moving party. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015). Pursuant to Federal Rule of Evidence 201, a court may "'judicially notice a fact that is not subject to reasonable dispute,' provided that the fact is 'generally known within the court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Id. (quoting Fed. R. Evid. 201(b)). The court may take judicial notice of public documents and government documents because their sources "cannot reasonably be questioned," and a court may take judicial notice of an IRS private letter Ruling because it is a letter from a government agency. Overall v. Ascension, 23 F. Supp. 3d 816, 824–25 (E.D. Mich. 2014) (quoting Fed. R. Evid. 201(b)).

Defendants ask the court to take judicial notice of the Authority's governing statute and articles of incorporation, the Authority's registration in the Secretary of State's website, as well as several statutes, administrative rulings, and an Internal

Revenue Service private letter ruling. (Doc. 30.) Plaintiffs do not oppose consideration of these documents whose accuracy cannot reasonably be questioned, and all are publicly available. The court will therefore take judicial notice of them.

**B.  Governmental Plan Status**

While ERISA generally applies to employee benefit plans, Congress exempted governmental plans from ERISA's coverage in part because the concern about the "long-standing abuses and deficiencies in the private pension system" was not present for public retirement plans, and in part based on principles of federalism. Rose v. Long Island R.R. Pension Plan, 828 F.2d 910, 914 (2d Cir. 1987); 29 U.S.C. § 1003(b)(1). A governmental plan is a "plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of the foregoing." 29 U.S.C. § 1002(32). The parties agree that if the Authority's plans are governmental plans, then the plans are not subject to ERISA coverage and Plaintiffs' claims fail as a matter of law. (Doc. 30 at 8–9; Doc. 34 at 5–7.) While the Fourth Circuit has not established a test for determining whether an entity is a governmental plan, other circuits have developed tests for determining whether an entity is a "political subdivision" or an "agency or instrumentality" under ERISA.

### 1.  Political Subdivision

To determine whether an entity is a "political subdivision" under federal law, courts routinely apply the test from <u>NLRB v. Natural Gas Utility District of Hawkins County</u>, 402 U.S. 600, 604–05 (1971).  <u>See</u> <u>Smith v. Reg'l Transit Auth.</u>, 827 F.3d 412, 417 (5th Cir. 2016); <u>Koval v. Washington Cty. Redevelopment Auth.</u>, 574 F.3d 238, 241 (3d Cir. 2009); <u>Shannon v. Shannon</u>, 965 F.2d 542, 547–48 (7th Cir. 1992); <u>Rose</u>, 828 F.2d at 916.  "Because ERISA is a federal statute, the term 'political subdivision' must be interpreted by reference to federal law, in the absence of clear legislative intent to the contrary."  <u>Rose</u>, 828 F.2d at 915 (citing <u>Hawkins</u>, 402 U.S. at 602–03).  Both parties agree that the <u>Hawkins</u> test should be used to determine whether the Authority constitutes a "political subdivision."[3]  (Doc. 30 at 9–10; Doc. 34 at 6.)  This test provides that "political subdivisions" are "entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate."  <u>Smith</u>, 827 F.3d at 417

---

[3] Although <u>Hawkins</u> involved the exclusion of political subdivisions from coverage under the National Labor Relations Act rather than ERISA, other circuits have applied the <u>Hawkins</u> test to ERISA cases "because ERISA, like the National Labor Relations Act, 'represents an effort to strike an appropriate balance between the interests of employers and labor organizations.'"  <u>Rose</u>, 828 F.2d at 916 (quoting H.R. Rep. No. 93-533, reprinted in 1974 U.S. Code Cong. & Admin. News 4639, 4647); <u>see</u> <u>Smith</u>, 827 F.3d at 417; <u>Koval</u>, 574 F.3d at 241.

(quoting Hawkins, 402 U.S. at 604-05). The test is disjunctive, so "if either prong is satisfied, then the entity in question is a political subdivision." Hutto v. Blue Cross & Blue Shield of Ala., No. 97-T-251-N, 1997 WL 659806, at *3 (M.D. Ala. June 9, 1997) (citing Shannon, 965 F.2d at 548); Smith, 827 F.3d at 417 (describing test as "disjunctive").

### a. First Hawkins Prong

The Authority satisfies the first prong of the Hawkins test because it was created by the state of North Carolina through a delegation of its authority pursuant to the HAA. See Moir v. Greater Cleveland Reg. Transit Auth., 895 F.2d 266, 271 (6th Cir. 1990).

Plaintiffs first argue that, pursuant to the directive in Hawkins that state law is not controlling as to whether an entity is a "political subdivision," the court should not focus on the HAA, which established the Authority, but should instead focus on the Authority's actual operations. (Doc. 34 at 7.) Defendants argue that the HAA demonstrates that the Authority satisfies the Hawkins test. (Doc. 39 at 2-4.)

Contrary to Plaintiffs' argument, courts routinely consider the statute that created the entity at issue when determining whether it satisfies the Hawkins test. See, e.g., Hawkins, 402 U.S. at 605; Koval, 574 F.3d at 243; Moir, 895 F.2d at 271. In fact, the first prong of Hawkins calls for courts to consider the

statute establishing the entity as part of the inquiry into whether the entity has been created directly by the state. See Shannon, 965 F.2d at 550.

Plaintiffs either misunderstand or misrepresent the statement from Hawkins that state law is not controlling. While Plaintiffs are correct that the Supreme Court in Hawkins cited the Fourth Circuit's decision in NLRB v. Randolph Electric Membership Corporation, 343 F.2d 60 (4th Cir. 1965), for the principle that a court looks to "the actual operations and characteristics of [entities] in deciding whether [they are] political subdivisions," both the Supreme Court in Hawkins and the Fourth Circuit in Randolph Electric considered the state statutes under which the entities were organized to ascertain the entities' characteristics. Hawkins, 402 U.S. at 605–06; Randolph Elec., 343 F.2d at 63. When the Supreme Court in Hawkins stated that state law is not controlling, it was clarifying that federal, rather than state, law governs the determination whether an entity is a "political subdivision," not that courts cannot consider the state statutes which created the entity. Hawkins, 402 U.S. at 602–04. Specifically, the Court was addressing whether a Tennessee Supreme Court decision holding that the entity was "an operation for a state governmental or public purpose" was "of controlling importance on the question whether the [entity] was a political subdivision of the state within [the National Labor Relations Act]

and was binding on the Board." Id. at 602. As noted above, the Supreme Court relied heavily on the relevant state statutes in concluding that the entity was a "political subdivision." Accordingly, the features of the Authority as provided in the HAA remain integral to the court's analysis.

Plaintiffs further argue that because the Authority was created by city resolution, it was not created directly by the State and therefore cannot satisfy the first prong of the Hawkins test. (Doc. 34 at 8.) Defendants disagree, arguing that the State can meet this prong through a state statute that either itself creates the entity, or that authorizes a local governmental body to create the entity. (Doc. 30 at 11.) Defendants note several cases in which courts have held that the first prong of Hawkins is met where a local government creates an entity pursuant to state statute. (Id.)

Defendants first cite to Hutto, in which the court found that a utility board was a "political subdivision" whose plans fell outside of ERISA coverage. Hutto, 1997 WL 659806, at *3–*4. The utilities board was incorporated pursuant to provisions of the Alabama Code, which provided that "at least three 'natural persons' must apply to the governing body of a municipality for its authorization to form a public corporation 'for the purpose of operating' a water, sewer, gas, or electric system, or any combination of the preceding systems." Id. at *3 (quoting Ala.

Code § 11-50-311). Like the HAA, the state statute in <u>Hutto</u> granted a municipality the authority to create the entity at issue. <u>See</u> <u>id.</u>; N.C. Gen. Stat. §§ 13E1-15(b), 131E-17(a). The <u>Hutto</u> court relied on this fact in determining that the utility board satisfied the first <u>Hawkins</u> prong. <u>Hutto</u>, 1997 WL 659806, at *3. Similarly, in <u>Lumbermens Mutual Casualty Company v. Combs</u>, the court found that the hospital at issue met the first prong because it was created directly by a county board of commissioners after approval by the county voters. 873 N.E.2d 692, 708-11 (Ind. Ct. App. 2007), <u>disapproved on other grounds by</u> <u>Kosarko v. Padula</u>, 979 N.E.2d 144 (Ind. 2012). Applying the <u>Hawkins</u> test to an entity under the National Labor Relations Act, the court in <u>Moir v. Greater Cleveland Regional Transit Authority</u> found that the entity satisfied the first prong of the test "because it was created by the state pursuant to [a state statute] which empowers counties, municipal corporations and townships to create transit authorities." 895 F.2d 266, 271 (6th Cir. 1990); <u>see also</u> <u>Shannon</u>, 965 F.2d at 550 (explaining that the first <u>Hawkins</u> prong requires determining whether the "entity had been created directly by the state or a political subdivision, such as a city").

In contrast, Plaintiffs cite one case in support of their argument, <u>Brown v. Reliance Standard Life Ins. Co.</u>, 52 F. Supp. 3d 1209, 1216 (N.D. Ala. 2014). (Doc. 34 at 8.) But as Defendants correctly point out (Doc. 39 at 5), the <u>Brown</u> opinion was withdrawn

by <u>Brown v. Reliance Standard Life Ins. Co.</u>, No. 2:13-cv-00261-RDP, 2014 WL 8773640 (N.D. Ala. Nov. 25, 2014), and thus "has no precedential value." <u>United States v. New York City Dept. of Ed.</u>, Nos. 16-cv-4291, 16-cv-4844, 2017 WL 1319695, at *1 n.1 (S.D.N.Y. Apr. 4, 2017) (citing <u>Harper v. Scott</u>, 577 F. Supp. 15, 17 (E.D. Mich. 1984), <u>aff'd</u>, 803 F.2d 719 (6th Cir. 1986)); <u>see also</u> <u>Miramontes v. Mills</u>, No. 11-08603, 2014 WL 12738922, at *7 n.36 (June 25, 2014). Moreover, the court in <u>Brown</u> did not conduct any meaningful analysis on the first prong of the <u>Hawkins</u> test. It simply stated that the entity at issue "was not created *directly* by the State of Alabama itself, but rather by an arm of the State (*i.e.*, the [University of Alabama] Board)," without providing any explanation or citation for its conclusion that creation by an arm of the state does not constitute creation directly by the state. <u>Brown</u>, 52 F. Supp. 3d at 1216. <u>Brown</u> is therefore poor support for Plaintiffs' argument that creation of an entity by a local government pursuant to a state enabling statute is insufficient to meet the first prong of <u>Hawkins</u>.

Because Defendants have provided ample persuasive case law holding that creation by a local entity pursuant to a state enabling statute is sufficient to satisfy the first prong of the <u>Hawkins</u> test, and Plaintiffs have neither distinguished these cases from the present case nor provided persuasive contrary authority, the court finds that the first prong of the test is

14

satisfied.

Plaintiffs offer an assortment of additional arguments as to why the Authority does not satisfy the first prong of the Hawkins test, none of which is persuasive. They argue that the Authority does not meet the Merriam-Webster Dictionary definition of "subdivision." (Doc. 34 at 8.) Plaintiffs do not cite any case which has considered a dictionary definition of "subdivision" to determine whether an entity is a "political subdivision" for purposes of the ERISA governmental plan exemption. Where, as here, the courts have developed a test to determine whether an entity constitutes a "political subdivision," the court need only address whether the judicial definition is met, not a separate generic dictionary definition.

Plaintiffs also argue that "courts have recognized that a hospital authority is not a political subdivision under ERISA." (Doc. 34 at 10.) In support of this argument, Plaintiffs cite to Germaine v. Unum Life Ins. Co. of Am., No. 2:03-cv-0104-WCO, 2004 WL 2624873, at *8 (N.D. Ga. Sept. 23, 2004), McMurtry v. Aetna Life Ins. Co., No. CIV-05-85-C, 2006 WL 2640627, at *4 (W.D. Okla. 2006), and Brown, 52 F. Supp. 3d at 1215-16. (Doc. 34 at 10.) As previously noted, the Brown opinion was withdrawn and thus lacks precedential value. Similarly, the McMurtry opinion lacks precedential value because it was vacated. See McMurtry v. Aetna Life Ins. Co., 273 F. App'x 758 (10th Cir. 2008). The Germaine

opinion is not persuasive, because it did not apply the <u>Hawkins</u> test and instead improperly relied solely on state law declarations of what constituted a "political subdivision." <u>Germaine</u>, 2004 WL 2624873, at *8. This is precisely the approach the Supreme Court rejected in <u>Hawkins</u>. <u>Hawkins</u>, 402 U.S. at 602-04. In fact, <u>Germaine</u> has been criticized for "end[ing] its analysis prematurely" by failing to consider both prongs of the <u>Hawkins</u> test before deciding that the hospital authority at issue was not a "political subdivision." <u>See Williams-Mason v. Reliance Standard Life Ins. Co.</u>, No. 206-124, 2006 WL 1687760, at *4 (S.D. Ga. June 16, 2006).[4]

Because the <u>Hawkins</u> test is disjunctive, satisfying either prong is sufficient for an entity to attain "political subdivision" status and thereby categorize its retirement benefits plans as "governmental plans" exempt from ERISA coverage. Nevertheless, as noted below, the court is also persuaded that the Authority meets the second prong of the test.

### b. Second <u>Hawkins</u> Prong

Courts have held that the second <u>Hawkins</u> prong — that the entity is administered by individuals who are responsible to public officials or to the general electorate — is met when public

_____

[4] The court in <u>Williams-Mason</u>, in contrast to <u>Germaine</u>, found that a hospital authority falls within the governmental exemption to ERISA under the agency or instrumentality prong of the <u>Hawkins</u> test. <u>Williams-Mason</u>, 2006 WL 1687760, at *4.

officials appoint and may remove the entity's governing members. See <u>Hawkins</u>, 402 U.S. at 605. Here, the Authority's board of commissioners is appointed by the county chairman (a county-level public official) from a list of nominees provided by the board. (Doc. 1 ¶¶ 49-50.); N.C. Gen. Stat. § 131E-18. The Authority's commissioners may be removed by the county chairman for inefficiency, neglect of duty, or misconduct following notice and a hearing. N.C. Gen. Stat. § 131E-22(a).

Plaintiffs argue that the second <u>Hawkins</u> prong requires more — that public officials must exercise administrative power over the entity such that the entity has "direct personal accountability to public officials or to the general public." (Doc. 34 at 11-12.) Plaintiffs' proposed standard is not persuasive because Plaintiffs misconstrue the case on which they rely, <u>Truman Medical Center. v. NLRB</u>, 641 F.2d 570 (8th Cir. 1981). There, the Eighth Circuit determined that a medical center did not meet the second prong because public officials did not have appointment and removal power over a majority of the entity's board. <u>Truman</u>, 641 F.2d at 573 (finding the governing body "a self-perpetuating board of directors" because the majority (31 out of 49) were "neither appointed by nor subject to removal by public officials or the general public and have no official connection to the [city, county, or state university].")). <u>Truman</u>'s description of "direct personal accountability" did not reference a stricter standard for

the second prong of Hawkins, as Plaintiffs suggest.  Instead, the
Truman court's use of the phrase "direct personal accountability"
derived from the fact that public officials did not appoint a
majority of the medical center's board of directors.  See id.
Rather than demand a higher standard for the second Hawkins prong,
Truman strengthens Defendants' assertion that the second prong
only requires a showing that public officials are authorized to
appoint and remove a majority of an entity's governing members.

        The Fifth Circuit has similarly noted that "what is relevant
for purposes of [this test] is whether a governmental entity . . .
and/or public officer . . . has the power to appoint and remove
the board and/or the 'managerial officers' of the putative
political subdivision."  StarTran, Inc. v. Occupational Safety &
Health Review Comm'n, 608 F.3d 312, 322 (5th Cir. 2010) (applying
Hawkins test to determine "political subdivision" status under the
Occupational Safety and Health Act).  This derives from the Hawkins
Court's articulation that the second prong of the test is satisfied
when public officials have appointment and removal power:
"Plainly, commissioners who are beholden to an elected public
official for their appointment, and are subject to removal
procedures applicable to all public officials, qualify as
'individuals who are responsible to public officials or to the
general electorate' within the Board's test."  402 U.S. at 608.

        The complaint alleges that the Authority's commissioners do

not include state officials and that the commissioners are not appointed or removed by state officials. (Doc. 1 ¶¶ 45-48.) But there is no requirement that the entity consist of _state_ officials or individuals who are appointed by _state_ officials, so long as local government officials have appointment and removal power. See _Moir_, 895 F.2d at 271-72 (finding that the second prong was met where board was appointed and subject to removal by municipal and county officials); _Lumbermens_, 873 N.E.2d at 709 (finding the second prong satisfied, and the hospital's administrators "appointed by and accountable to public officials" where the county board of commissioners appointed and had the power to remove board members).

Plaintiffs argue that the Authority's appointment power is insufficient to satisfy the test. Particularly, Plaintiffs allege that no county or state officials select the members of the board, the board submits nominees to the county chairman who has historically approved every nominee, and no state or county officials have served on the board, resulting in a "self-perpetuating" board that lacks personal accountability to public officials or to the general public. (Doc. 34 at 12-13.) This argument misses the point. The inquiry is whether a public official has power over appointments, not the frequency with which the county chair exercises his power to reject nominees. While Plaintiffs correctly note that the HAA provides for the county

chairman to appoint commissioners only from the commissioner-generated list of nominees, the county chairman "may require the commissioners to submit as many additional lists of nominees as he or she may desire," providing the county chairman with the authority to reject as many nominees as he or she pleases. N.C. Gen. Stat. § 131E-18(d). Plaintiffs' argument fails because the county chairman is the public official with the authority to appoint members to the Authority's board of commissioners.[5]

The cases Plaintiffs cite in support of their argument that the board is "self-perpetuating" and lacks direct personal accountability to public officials are distinguishable. In Christman v. Coresource, Inc., No. 2:14-cv-1913, 2015 WL 10791973, at *4 (S.D. Ohio Aug. 26, 2015), the court found that the board at issue was "not [like] the board in Hawkins" because the board members could only be replaced by other members, in contrast to the board in Hawkins, which "was a group of citizens appointed by an elected county official and the members were subject to removal initiated by the Governor, the county prosecutor, or private citizens." Coresource, 2015 WL 10791973, at *4. Like the board in Hawkins, and unlike the board in Christman, the commissioners on the Authority's Board are appointed and subject to removal by

---

[5] Plaintiffs allege that the county chairman has historically "rubber-stamped the nominees" for the board and that the chairman "has never removed" a commissioner. (Doc. 1 ¶¶ 51, 53.) But the test is whether public officials have the authority to appoint and remove members, not whether they choose to exercise that power.

the county chairman, an elected county official. N.C. Gen. Stat. §§ 131E-18, 131E-22(a). (Doc. 1 ¶¶ 50-51.) Equally distinguishable is Cape Girardeau Care Center, Inc., 278 N.L.R.B. 1018 (1986), where the record showed that "the County did not appoint the Employer's directors, but simply approved their appointment, and that the County approval was not pursuant to a [state] statute or County ordinance, but was a further effort to insure tax-exempt financing of the sale of the nursing home." 278 N.L.R.B. at 1019. In contrast to the appointment process in Cape Girardeau, appointment by the county chairman is pursuant to North Carolina statute, and Plaintiffs have not alleged the appointment process is conducted for some collusive purpose.

Plaintiffs argue that the county does not receive information from the Authority that would allow it to determine whether a commissioner should be removed because the Authority does not produce performance reviews and no officials attend board meetings. (Doc. 34 at 14.) Plaintiffs urge the court to consider the entity's "actual operations and characteristics," quoting Randolph Electric, 343 F.2d at 63. The court declines to take this approach.

Randolph Electric was decided prior to the Supreme Court's Hawkins decision. In Hawkins, the Supreme Court expressly declined to take the approach proffered by Plaintiffs, stating that the case did not require the Court to "decide whether 'the actual

operations and characteristics' of an entity must necessarily feature one or the other of the [prongs of the Hawkins test] to qualify an entity for the exemption," because the Court thought "that it is plain on the face of the [state] statute that the [NLRB] erred" in finding that the entity at issue was not a political subdivision. Hawkins, 402 U.S. at 605. Even if the court were to simply look to Randolph Electric, the only case cited by Plaintiffs in support of their argument that the removal power is lacking as a practical matter (Doc. 34 at 13–14), the Fourth Circuit in fact looked to the act establishing the entity in order to determine its operations and characteristics. Randolph Electric, 343 F.2d at 63. The entity in Randolph Electric is further distinguishable because the officers were not publicly appointed and no public officials had removal power. Id.

To the extent the Plaintiffs' argument suggests that the county chairman's removal power is insufficient because it is limited to removal only for inefficiency, neglect of duty, or misconduct, Plaintiffs fare no better, as the removal power in Hawkins itself was limited to removal only for misfeasance or nonfeasance. Hawkins, 402 U.S. at 607; see also Moir, 895 F.2d at 271–72 (finding sufficient removal power where public officials had the power to remove trustees for misfeasance, nonfeasance, or malfeasance).

As Defendants correctly point out in their reply brief, the other cases cited by Plaintiffs in support of their argument that the Authority fails to satisfy the second prong of the Hawkins test are also distinguishable because the public officials in each of the cases lacked either appointment or removal power over a board majority. (Doc. 39 at 8); see Jefferson Cty. Cmty. Ctr. for Developmental Disabilities, Inc. v. NLRB, 732 F.2d 122, 125–26 (10th Cir. 1984) (holding that the entity failed to meet the second prong of the test where a majority of the Board was neither appointed by nor subject to removal by public officials or the general electorate and had no official connection to any governmental body), overruled on other grounds by Aramark Corp. v. NLRB, 179 F.3d 872, 882 (10th Cir. 1999) (en banc); Brock v. Chi. Zoological Soc., 820 F.2d 909, 911–12 (7th Cir. 1987) (finding that the government possessed "no power to appoint or remove" the entity's officers); Poitier v. Sun Life of Canada, No. 98–3056, 1998 WL 754980, at *3 (E.D. Pa. Oct. 28, 1998) (finding that the public officials' power to appoint some board members, without more, was insufficient to meet the second prong of the Hawkins test); Cape Girardeau Care Ctr., 278 N.L.R.B. at 1019 (1986) (finding public officials lacked authority to remove any board member, and the county's approval of appointment was not pursuant to a state statute or county ordinance)

As one court noted,

[t]here are simply no . . . cases of which we are aware that have held an entity[,] a majority of whose board of directors is selected and removable by public officials and whose principle executive officers are likewise selected and removable by public officials, is not one "administered by individuals who are responsible to public officials or to the general electorate" and is not a political subdivision . . . .

StarTran, 608 F.3d at 324.   By statute, the Authority is administered by a board of commissioners appointed by the Chairman of County Commissioners, who is a public official.   The chairman has the statutory power to remove a commissioner for inefficiency, neglect of duty, or misconduct.   The Authority therefore satisfies the second prong of the Hawkins "political subdivision" test because it is administered by officials who are responsible to public officials.   See Moir, 895 F.2d at 271–72.

### c.   Other Characteristics of the Authority

Plaintiffs urge the court to consider "other characteristics" of the Authority that they argue demonstrate that it is not a "political subdivision."   (Doc. 34 at 14–16.)   As Defendants correctly point out, many courts have found that where a court finds that one prong of the Hawkins test is satisfied, it need not consider any other factors.   See, e.g., Smith, 827 F.3d at 417 (finding that the entity was a political subdivision "under either prong of this disjunctive test" and not considering any additional factors); NLRB v. Princeton Mem'l Hosp., 939 F.2d 174, 177–78 (4th Cir. 1991) (limiting its analysis to the second prong of the Hawkins test and not considering any additional characteristics

beyond appointment and removal authority and the administration of the entity). Nevertheless, some courts have noted additional features of an entity indicative of its status as a "political subdivision." See, e.g., Koval, 574 F.3d at 243 (noting that the power of eminent domain and the broad grant of authority to the entity to exercise all powers necessary or appropriate to carry out the purposes of the act supported the conclusion that the entity was a "political subdivision"); Rose, 828 F.2d at 916-17 (noting "other indicia of sovereignty"). Here, those features confirm that the Authority is a "political subdivision."

In Hawkins, the Supreme Court noted the following additional features as relevant to determine whether an entity qualified as a "political subdivision": the power of eminent domain; a broad statutory grant bestowing the entity with "all the powers necessary and requisite for the accomplishment of the purpose for which such [entity] is created, capable of being delegated by the legislature;" a public records requirement; the automatic right to a public hearing and written decision by the commissioners; the commissioners' power of subpoena; and the commissioners' nominal compensation. Hawkins, 402 U.S. at 608.

Here, the Authority possesses an overwhelming majority of these features. The Authority holds the power of eminent domain, N.C. Gen. Stat § 131E-24, has a broad grant of authority from the HAA, which provides that the Authority shall have "all powers

necessary or convenient to carry out the purposes" of the Act, N.C. Gen. Stat. § 131E-23(a), can receive appropriations from the General Fund as "a necessary expense of the city or county," N.C. Gen. Stat. § 131E-30, is subject to public records laws, N.C. Gen. Stat. § 132-1, and its commissioners are not compensated for their services, N.C. Gen. Stat. § 131E-18(f). The presence of these factors indicates that the Authority "clearly has powers beyond those 'of a private corporation'" and affirms this court's conclusion that the Authority constitutes a "political subdivision." Koval, 574 F.3d at 243 (quoting Hawkins, 402 U.S. at 606).

The additional factors that Plaintiffs urge the court to consider, (Doc. 34 at 14–15) such as the Authority's inability to levy taxes, lack of police power, and the fact that the Authority's employees' salaries are not paid by the state or county, were not noted by the Hawkins Court as relevant to the determination that an entity constitutes a "political subdivision." See Hawkins, 402 U.S. at 605–09.[6]   Furthermore, Plaintiffs have not presented persuasive caselaw to show that these factors are relevant to the

---

[6] Plaintiffs also point out that the Authority lacks subpoena power. (Doc. 34 at 14.) Hawkins did identify subpoena power as suggestive that an entity is a "political subdivision." See Hawkins, 402 U.S. at 608. There is no evidence, however, that subpoena power was given more weight than the other factors described in Hawkins.  Because the Authority possesses far more of the factors and characteristics indicative of a "political subdivision" in Hawkins than it lacks, the absence of subpoena power does not alter the court's conclusion.

determination that the Authority constitutes a "political subdivision." Even if they were, they do not compel a different result, and the court agrees with Defendants that the Authority satisfies the second Hawkins prong.

Because the court finds that the Authority satisfies both prongs of the Hawkins test and constitutes a "political subdivision," the court need not reach Defendants' separate contention that the Authority is exempt from ERISA coverage because it constitutes an "agency or instrumentality." (Doc. 34 at 16–23.)

**III. CONCLUSION**

For the reasons stated, the court finds that the Authority is a "political subdivision" and that its plans are therefore "governmental plans" exempt from ERISA coverage.

IT IS THEREFORE ORDERED that the Authority's motion to dismiss (Doc. 28) and MedCost's motion to dismiss (Doc. 31) are GRANTED, and the complaint is DISMISSED.

                                        /s/    Thomas D. Schroeder
                                        United States District Judge

August 30, 2019